**MAGIC VALLEY POTATO SHIPPERS, INC., Petitioner,**

v.

**The SECRETARY OF AGRICULTURE, Respondent.**

**No. 81–7863.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1983.

Decided April 1, 1983.

Donald J. Chisholm, Rupert, Idaho, for petitioner.

Raymond W. Fullerton, Asst. Gen. Counsel, Washington, D.C., for respondent.

Before GOODWIN, ALARCON and FERGUSON, Circuit Judges.

PER CURIAM:

Magic Valley Potato Shippers, Inc., a packer and shipper of fresh Idaho potatoes, appeals the decision of the Secretary of Agriculture that it misbranded and shipped nine lots of potatoes in violation of 7 U.S.C. § 499b(5). It appeals as well the suspension of the company's Perishable Agricultural Commodities Act license for thirty days. Because the applicable regulations are clear and Magic Valley had fair notice of them, we affirm.

An administrative complaint was filed against Magic Valley by the United States Department of Agriculture (USDA) after the company defiantly shipped to three out-of-state receivers nine lots of potatoes labeled as U.S. No. 1 grade despite the fact that the potatoes failed inspection at that grade due primarily to an internal defect known as net necrosis. An administrative law judge found that Magic Valley had violated the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499b(5), by such shipment and suspended its PACA license for sixty days. On appeal, the Secretary of Agriculture affirmed the findings of violation but reduced the suspension to thirty days.

On review, Magic Valley contends that this decision should be set aside because the USDA potato grading standards as applied to net necrosis are internally inconsistent and therefore void for vagueness. In addition, Magic Valley argues that the thirty-day license suspension is unduly harsh in the light of the circumstances.

I.

In considering whether or not an administrative regulation is unconstitutionally vague, the reviewing court must assess it within the context of the particular conduct to which it is being applied. *United States v. National Dairy Corp.,* 372 U.S. 29, 36, 83 S.Ct. 594, 599, 9 L.Ed.2d 561 (1963); *Donovan v. Royal Logging Co.,* 645 F.2d

822, 831 (9th Cir.1981); *United States v. Dacus,* 634 F.2d 441, 444 (9th Cir.1980). The regulation must "give a person of ordinary intelligence fair notice" of what is required. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Donovan v. Royal Logging Co.,* 645 F.2d at 831. For Magic Valley to be found guilty of misrepresenting the grade of its potatoes in violation of 7 U.S.C. § 499b(5), it is necessary that the applicable regulations give it fair notice of what is required for a shipment of potatoes to be certifiable as U.S. No. 1 grade.

The "United States Standards for Grades of Potatoes" set forth at 7 C.F.R. §§ 2851.-1540–.1566,[1] as applied to net necrosis, are clear and definite. Net necrosis is an internal defect which produces discoloration both inside and outside of a potato's vascular ring. The standards specify that internal defects producing discoloration outside of or not entirely confined within the vascular ring are to be measured by how much of the potato has to be pared away to remove the defect. 7 C.F.R. § 2851.1565. If removal of the defect produces a loss of five percent or more of the weight of an individual potato, the potato is considered damaged. *Id.* If the weight of all such damaged potatoes exceeds five percent of the total weight of the lot, and the weight of all defective potatoes combined exceeds eight percent of the total weight, the lot is not certifiable as U.S. No. 1. 7 C.F.R. § 2851.-1546(2) & (2)(ii).

Before the potatoes left the plant, Magic Valley had fair notice that the lots were not certifiable as U.S. No. 1. The instructional manuals for market inspections define net necrosis in detail and note that since it is not limited to the area within the vascular ring, it is to be scored on the pare-away basis. The inspectors explained this to the company's president and, by cutting potatoes at the plant, demonstrated to him that the potatoes were seriously damaged. De-

---

1. The potato standards have been renumbered as 7 C.F.R. §§ 51.1540–.1566. However, at the time this case was considered by the Secretary of Agriculture the old numbers, i.e., 7 C.F.R.

§§ 2851.1540–.1566, still applied. For ease of reference, the former numbering is used herein. The regulations under the current numbering system are themselves unchanged.

spite this, Magic Valley shipped the potatoes as U.S. No. 1, still contending that the inspectors had used the wrong method of inspection.

■ The regulations for grading potatoes are clear and were properly applied with respect to net necrosis. Magic Valley had fair notice of potential violation. We affirm the Secretary's determination of violation and reject the petitioner's contention that the regulations are void for vagueness.

## II.

■ The Secretary's choice of sanction is not to be overturned unless the reviewing court determines it is " 'unwarranted in law ... or without justification in fact ....' " *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973), *quoting American Power Co. v. SEC,* 329 U.S. 90, 112–13, 67 S.Ct. 133, 145–46, 91 L.Ed. 103 (1946); *Hinkle Northwest, Inc. v. SEC,* 641 F.2d 1304, 1310 (9th Cir.1981); *see also* 5 U.S.C. § 706(2)(A). The fashioning of an appropriate remedy is for the Secretary of Agriculture and not for the court. *Butz,* 411 U.S. at 188–89, 93 S.Ct. at 1459. "The court may decide only whether, under the pertinent statute and relevant facts, the Secretary made 'an allowable judgment in [his] choice of the remedy.' " *Id.* at 189, 93 S.Ct. at 1459, *quoting Jacob Siegel Co. v. FTC,* 327 U.S. 608, 612, 66 S.Ct. 758, 760, 90 L.Ed. 888 (1946).

■ The thirty-day suspension of Magic Valley's license is well within the ninety-day maximum permitted by the applicable statute, 7 U.S.C. § 499h(a), and is therefore clearly not "unwarranted in law." The suspension is also justified in fact since Magic Valley, in open defiance of the USDA inspectors, knowingly misbranded and shipped nine lots of potatoes as U.S. No. 1 when they were clearly not so certifiable. The company also refused to recall these shipments or give information as to their destination.

The Secretary made an allowable judgment in his choice of remedy under the pertinent statute and the relevant facts. *Butz,* 411 U.S. at 189, 93 S.Ct. at 1459. He concluded that a thirty-day suspension during the active season would serve as an adequate deterrent to Magic Valley as well as to other potential violators. In reducing the penalty to thirty days, he took into consideration the fact that this was the company's first offense. This order is clearly within the broad discretion given him by Congress to impose sanctions to deter repeated violations of the Act. *Id.* at 187–88, 93 S.Ct. at 1458–59; *accord Maine Potato Growers v. Butz,* 540 F.2d 518, 520, 523 (1st Cir.1976) (upholding sixty-day suspension of potato growers cooperative's license for shipping misbranded potatoes).

The decision and final order of the Secretary are affirmed, and the case is remanded to set the date of the thirty-day suspension of Magic Valley's PACA license to take effect during the active season for packing and shipping Idaho potatoes.